**Sally J. BURKE, Plaintiff,**

**v.**

**KODAK RETIREMENT INCOME PLAN, and Kodak Retirement Income Plan Committee, Defendant.**

**No. 00–CV–6596L.**

United States District Court,
W.D. New York.

July 31, 2002.

George A. Schell, Jr., Schell & Schell, Fairport, NY, for Plaintiff.

Eric J. Ward, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Introduction

In this action, plaintiff Sally J. Burke (hereinafter "plaintiff") claims that the Kodak Retirement Income Plan (hereinafter "KRIP") and the Kodak Retirement Income Plan Committee (hereinafter "KRIP-CO") (collectively "defendants") wrongfully denied her application for pre-retirement survivor income benefits (hereinafter "SIB"), which she claimed when her husband died in November, 1999.

Both plaintiff and defendants now move, under Fed.R.Civ.P. 56, for summary judgment. For the reasons that follow, plaintiff's motion is denied, defendants' cross-motion is granted, and plaintiff's complaint is dismissed with prejudice.

### Factual Background

At the time of his death, plaintiff's husband, Kenneth Burke (hereinafter "Burke"), had been employed by Eastman Kodak ("Kodak") for twenty-seven years. Deposition of Sally J. Burke, May 23, 2001, pp. 64 (hereinafter "Plaintiff's Deposition"). In 1991, Burke and plaintiff began living together, and thereafter maintained joint bank accounts and made joint purchases. Affidavit of Sally J. Burke, sworn to on 21st of February, 2002, ¶ 5–11 (hereinafter "Plaintiff's Affidavit"). They also shared expenses and were responsible for the support and maintenance of their children from prior marriages. *Id.*

Burke was diagnosed with lung cancer in March, 1999. Plaintiff's Deposition, pp. 46. Following his diagnosis, he began receiving short-term disability benefits from Kodak, but did not retire. Burke and plaintiff were married on May 17, 1999. *Id.* at pp. 44. Burke died of cancer on November 9, 1999. *Id.* at pp. 50.

Shortly after Burke's death, Diane Fagan, Kodak's Benefits Administrator, sent a letter to plaintiff detailing the benefits that she might be eligible to receive. Dkt. # 18, Exhibit B. In the letter, Fagan instructed plaintiff that SIB would begin after plaintiff provided Kodak with a "Dependent Verification Form," a copy of her marriage certificate, a copy of her birth certificate and a copy of Burke's death certificate. *Id.* The letter stated "You are eligible to receive [SIB] . . . as long as you have been married to Kenneth for at least one year." *Id.* Upon discovering that plaintiff had been married to Burke for less than one year, on November 23, 1999, Fagan sent a second letter to plaintiff indicating that she was not eligible for SIB. Ms. Fagan did advise, however, that survivor benefits would be payable to Burke's dependent children. Dkt. # 18, Exhibit E.

Included with this letter was a copy of a booklet entitled, *You & Kodak.*[1]

According to the booklet, which was, as discussed *infra*, the SPD, an appeal from a denial of benefits, must be filed within ninety (90) days of the denial.

> **If you remain dissatisfied and wish to appeal, you should, within 90 days of the date the claim was denied (or within 90 days of the date the claim is assumed to be denied), write a letter to the plan administrator asking for a review.**

*You & Kodak,* pp. 334.

Plaintiff's attorney appealed the denial of SIB in a letter dated July 20, 2000. Dkt. # 18, Exhibit G. In the letter, he acknowledged the tardiness of the appeal, citing that the "emotional state of Ms. Burke upon the death of her husband" delayed her application for appeal. *Id.* He also claimed, for the first time, that plaintiff qualified for SIB as a "domestic partner." *Id.*

Plan Administrator Pamela Cromp reviewed plaintiff's appeal. Cromp's Deposition, pp. 6. She denied plaintiff's appeal on August 7, 2000, citing both the untimeliness of plaintiff's appeal, and the fact that plaintiff did not meet the eligibility requirements to receive SIB as either a spouse or a domestic partner. Dkt. # 18, Exhibit G.

### Discussion

On a motion for summary judgment, a court's responsibility is to determine whether there are issues to be tried. *See Joyce v. Curtiss–Wright Corp.,* 171 F.3d 130 (2d Cir.1999); *see also Larsen v. NMU Pension Trust,* 902 F.2d 1069, 1073 (2d

Cir.1990). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Larsen,* 902 F.2d at 1073. A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Standard of Review

Plaintiff's suit for benefits was commenced pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). This section permits a plan participant or beneficiary to sue to recover benefits due under the terms of the applicable plan.

In this case, the administrator of the applicable plan denied plaintiff's claim for benefits and, therefore, the issue before the district court is whether that denial was proper under ERISA. The parties do not dispute that under the terms of the plan at issue here, the arbitrary and capricious standard of review applies. *See Kinstler v. First Reliance Std. Life Ins. Co.,* 181 F.3d 243 (2d. Cir.1999) (holding that where a benefit plan reserves to the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, denials of benefits challenged under § 1132(a)(1)(B) are subject to the deferential arbitrary and capricious standard); *see also Firestone Tire and Rubber Co. v.*

---

1. *You & Kodak* is a publication of over 334 pages, containing sections entitled Advantage/Flex Plan, Health Care, Dental, Reimbursement Accounts, Vacation Buy, Life Insurance, Accidental Death Insurance, Long-Term Disability, Long–Term Care, Other Income Protection, Leaves of Absence, Work and Family, Retirement Income (specifically KRIP), Wage Dividends, Investment Plans, Leisure Time, and General Information.

*Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

"The arbitrary and capricious standard of review is highly deferential to a plan administrator. The question before a reviewing court under this standard is whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *See Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,* 46 F.3d 1264, 1271 (2d Cir.1995) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). Under this standard, a Plan Administrator's decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *See Kinstler,* 181 F.3d at 249 (quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995)). A district court may not substitute its judgment for that of the Plan Administrator, and a court's review under the arbitrary and capricious standard is limited to the administrative record. *See Wojciechowski v. Metropolitan Life Ins. Co.,* 75 F.Supp.2d 256, 262 (S.D.N.Y.1999).

**Eligibility for Survivor Income Benefits**

Under the plan at issue, there are several categories of survivors who are entitled to receive SIB benefits. Two of those— surviving spouse or surviving domestic partner—are at issue here. There are certain conditions, though, that must be met in order to establish entitlement to the SIB benefit. Unfortunately for plaintiff, she failed to meet the requirements to receive benefits as a surviving spouse or as a domestic partner.

In 1997, Kodak distributed an employee handbook entitled *You & Kodak Employee Handbook* (hereinafter *"You & Kodak"*) to all its employees as the summary plan document (hereinafter "SPD") for all benefit plans offered by Kodak, including KRIP. Deposition of Pamela Cromp, October 10, 2001, pp. 23 (hereinafter "Cromp's Deposition"). At all times relevant to this suit, this SPD was in effect. Cromp's Deposition, pp. 16.

One of the benefits offered to KRIP participants was SIB, which provided a percentage of an employee's retirement income benefit to "an eligible spouse, domestic partner, dependent child or dependent parent" at the time of the employee's death. *You & Kodak,* pp. 271–272. Kodak extended SIB eligibility to domestic partners effective January 1, 1997, citing Kodak's equal employment opportunity policy which "promotes equal treatment of employees regardless of marital status or sexual orientation." *You & Kodak News,* Dkt. # 18, Exhibit I, pp. 4.

Under KRIP, a spouse becomes eligible for SIB after being married to a plan participant *for one year or more* prior to that participant's death. *You & Kodak,* pp. 272. Those regarded as eligible domestic partners under KRIP are two people of the same or opposite sex in a spouse-like relationship who have met all of the following requirements for at least one year prior to collecting benefits. The requirements are that the parties:

(1) intend to remain each other's domestic partner indefinitely;

(2) reside together in the same permanent residence;

(3) are emotionally committed to one another and are jointly responsible for the common welfare and financial obligations of the household, or the domestic partner is chiefly dependent upon the employee for care and financial assistance;

(4) are not legally married to anyone else and are not the domestic partner of anyone else;

(5) are not related by blood closer than would bar marriage under applicable law; and

(6) are both at least 18 years of age and mentally competent to enter into a legal contract.

*You and Kodak,* pp. 200 *et seq.* Additionally, KRIP requires that an affidavit of domestic partnership be signed by both the plan participant and his/her domestic partner and that affidavit must be filed with Kodak. *Id.;* Dkt. # 18, Exhibit L, pp. 19.

In addition to the revised SPD issued in 1997, the decision to extended SIB to domestic partners was publicized in two separate Kodak publications: "You & Kodak News" (published Winter, 1996) and "You & Kodak Benefits Update" (published July, 1997), the ERISA-mandated summary of material modifications. Dkt. # 18, Exhibits I & J. Both publications listed the prerequisites for domestic partnership status, including the affidavit requirement. *Id.*

■ The critical issue before the Court is whether or not plaintiff was entitled to SIB at the time of her husband's death either as a surviving spouse or as a surviving domestic partner. The SPD reads: "If the [SIB] is payable to your spouse, you must have been married for at least one year prior to your death." *You & Kodak,* pp. 272. The SPD is quite clear as to the eligibility requirements for a spouse who wishes to collect SIB. It is undisputed that plaintiff and Burke had only been married for about five months, from May 17, 1999 to November 9, 1999, when Burke died. Burke's Deposition, pp. 44, 50. They were not married for a year, and hence plaintiff was not eligible to receive SIB at the time of her husband's death, as a surviving

spouse. The denial of benefits was based upon the provisions of KRIP, and involved no arbitrary or capricious decision by KRIPCO.

■ Plaintiff's alternative claim, that she should receive benefits because of her prior relationship with Burke, fares no better. Plaintiff and Burke failed to meet the clear requirements for "domestic partners." Plaintiff and Burke did not fulfill the plan's requirements for establishing their status as "domestic partners" because they never filed the requisite affidavit of domestic partnership, signed by both parties, attesting to their relationship, which must have been in existence for at least one year. This affidavit requirement is clearly set forth in the SPD. On my review, that requirement was referenced in at least sixteen different places in the SPD. *See You & Kodak,* pp. 39, 46, 49, 59, 80, 82, 92, 138, 153, 160, 166, 176, 177, 181, 183 and 200.

■ It is well established that an SPD must be read as a whole and that single sentences or paragraphs do not control. "It [is] error to attend only to one paragraph, page, or portion of the summary." *See Hansen v. Continental Ins. Co.,* 940 F.2d 971, 981 (5th Cir.1991) (citing *Sharron v. Amalgamated Ins. Agency Servs., Inc.,* 704 F.2d 562, 566–67 (11th Cir.1983)) (To "focus on only one page of the summary [would] represent an unrealistically narrow view of how a reasonably prudent employee would read and review this important document."); *see also Estate of Becker v. Eastman Kodak Co.,* 120 F.3d 5, 8 (2d Cir.1997). Under this standard, the affidavit requirement could not have been set forth more clearly.

Furthermore, it is evident that Burke and plaintiff were aware that Kodak had adopted a plan to provide benefits for domestic partners, but plaintiff and Burke

affirmatively made the decision not to take steps to establish their domestic partnership. At her deposition, plaintiff stated that she and Burke were aware that Kodak had started making benefits available to domestic partners. At the time, plaintiff was employed by the University of Rochester and they elected not to obtain benefits as domestic partners under Kodak's plan because plaintiff was reluctant to switch to Kodak's plan because she was afraid it might not cover pre-existing medical conditions which had been covered by her employer. Plaintiff's Deposition, pp. 76–77. From this record, it appears clear that plaintiff and Burke were aware of the new provisions in Kodak's plans which provided for benefits to domestic partners, but they elected not to pursue the requirements for achieving such status.

Plaintiff and Burke failed to meet the requirements for domestic partners, and plaintiff also failed to meet the one-year marriage requirement to qualify as a surviving spouse. Therefore, the administrator properly denied SIB benefits.

The fact that plaintiff lived with Burke for an extended period of time prior to their marriage does not by itself establish eligibility. Plaintiff's partial compliance with the requirements for both domestic partnership and for that of a surviving spouse does not add up to complete compliance with the requirements for establishing either.

**Lack of Reliance**

■ I believe that the SPD adequately informed employees and beneficiaries of the requirements for obtaining benefits as either a domestic partner or a surviving spouse. But, even if were to find some deficiency, plaintiff has failed to demonstrate that she relied to her detriment on the plan and the parts now claimed to be deficient.

Even assuming, *arguendo*, that I were to find that *You & Kodak* was deficient in either respect, I find no evidence that plaintiff or her husband detrimentally relied upon the plan. In fact, plaintiff testified that she never reviewed the SPD, and that her husband's decision not to list her as a domestic partner was an affirmative decision so as not to jeopardize health insurance coverage. Plaintiff's Deposition, pp. 72, 76–77. *See Moriarity v. United Techs. Corp. Represented Employees Retirement Plan*, 947 F.Supp. 43, 53 (D.Conn.1996) ("Without having read the SPD, plaintiff could not have relied on it or been prejudiced or misled by its contents."), *aff'd*, 158 F.3d 157 (2d Cir.1998). There is simply no evidence to support plaintiff's assertion that she detrimentally relied on the SPD at any point.

**Exhaustion of Remedies**

■ Although unnecessary for resolution of this case, I reject defendants' contention that the case should be dismissed because plaintiff failed to exhaust her administrative remedies. Defendants contend that plaintiff's failure to appeal the denial of her claim within the ninety-day period precludes review in federal court.

■ There is ample authority requiring that a participant must exhaust all administrative remedies open to her before bringing a federal action. *See Alfarone v. Bernie Wolff Construction*, 788 F.2d 76, 79 (2d. Cir.) (recognizing "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases."), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986); *see also Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 593 (2d. Cir.1993) (citing *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980)) (requirement that plan provides remedies suggests Congress' intent to have courts require exhaustion of these remedies). However, where the de-

nial instrument fails to comply with 29 U.S.C. § 1133 and its regulations[2], a time bar contained within a plan is not triggered. *See White v. Jacobs Eng'g Group Long Term Disability Benefit Plan*, 896 F.2d 344, 349–50 (9th Cir.1989); *see also Challenger v. Local Union No. 1 of Int'l Bridge, Structural and Ornamental Ironworkers, AFL—CIO*, 619 F.2d 645, 648 (7th Cir.1980). If a denial notice substantially complies with regulations, it will satisfy 29 U.S.C. § 1133 despite any technical deficiencies in its structure. *See Diagnostic Medical Associates, M.D., P.C. v. Guardian Life Ins. Co. of America*, 157 F.Supp.2d 292, 299 (S.D.N.Y.2001) (citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir.1992)).

The exhaustion requirement, however, is only applicable if the claimant is properly apprised of the opportunity to pursue such remedies. Plaintiff was not given proper notice here and, therefore, her apparently tardy administrative appeal does not preclude federal court review. I find that the plan administrators failed to give plaintiff proper notice when they initially denied her claim of the ninety-day filing requirement for an appeal. That error constituted a failure to comply with 29 U.S.C. § 1133 and the regulations adopted to implement that section.

I find that the mere inclusion of *You & Kodak* with the denial letter is not substantial compliance with defendants' obligation to afford plaintiff an opportunity for full and fair review of the denial. 29 U.S.C. § 1133(b); *see Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 808 (6th Cir.1996) ("When claim communications as a whole are sufficient to fulfill the purposes of § 1133, the claim decision will be upheld even if a particular communication does not meet those requirements. This rule ... appropriately recognizes that once

the purposes of § 1133 are met, justice does not require, indeed it forbids, the reversal of a claim decision based on a technical defect.").

Because of the lack of notice, I have considered the merits of plaintiff's claims, and I decline to default plaintiff on procedural grounds because of her delay in filing her appeal with the administrator from the initial denial.

### Conclusion

Plaintiff's motion for summary judgment (Dkt. # 7) is denied, and defendants' cross-motion for summary judgment (Dkt. # 15) is granted. The complaint is dismissed with prejudice.

IT IS SO ORDERED.

---

**2.** 29 C.F.R. § 2520.102–3(1), 29 C.F.R. § 2520.102–3(j)(1).